**IN THE UNTED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FATIMAH TOTTEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Hon. |
| | ) | Judge Presiding. |
| BENEDICTINE UNIVERSITY, | ) | |
| | ) | |
| | ) | Plaintiff Demands |
| Defendant. | ) | Trial By Jury |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff Fatimah Totten, by and through her attorneys, The Collins Law Firm, P.C., complains as follows against Benedictine University:

## INTRODUCTION

Plaintiff, a 23-year-old, mixed-race, half-black and half-white, Muslim woman, was a student at Benedictine University ("Benedictine") from fall 2016 until May 2020. In December of 2018, Plaintiff reported to Benedictine Police and administrators that she had been assaulted three times on three separate occasions by the same Benedictine student ("the Assailant").[1] After completing a formal Title IX investigation, Benedictine issued a Title IX Report in which it found that on all three occasions Plaintiff had not consented and concluded that the Assailant had sexually assaulted Plaintiff three times.

However, instead of protecting Plaintiff and providing her with reasonable accommodations that would have allowed her to complete her education and obtain a degree

---

[1] The Assailant was subsequently charged with two counts of Battery. Criminal proceedings are pending in DuPage County.

without fear of further sexual assault and emotional trauma, Benedictine retaliated against Plaintiff for reporting that she had been sexually assaulted. As described in this complaint, this retaliation was perpetrated by both high-ranking Benedictine officials and the Benedictine Police, and included, *inter alia*: (1) violating its own Title IX Policy by tolerating sexual misconduct on its campus and allowing the Assailant to continue taking courses on its campus; (2) ignoring Plaintiff's request to take courses online so that she would not have to risk further on-campus encounters with the Assailant; (3) refusing to provide Plaintiff with simple accommodations necessary to Plaintiff graduating on time; (4) putting up administrative roadblocks to the completion of Plaintiff's education; (5) publicizing photos of the Assailant graduating in May 2019 when Benedictine had prevented Plaintiff from doing so; and (6) making inflammatory comments designed to make Plaintiff believe that she—the victim of sexual assault and other harassment— was underserving of a safe, non-discriminatory, educational environment.

Further, when Plaintiff met with the Benedictine Dean of Students to ask why Benedictine had responded to her report of sexual assault and other harassment in a retaliatory fashion, the Benedictine Dean of Students told Plaintiff that she would have received a different, more supportive, response from Benedictine had she "been a different kind of student". Plaintiff, a mixed-race, observant Muslim who wore a hijab while on campus in accordance with her faith, understood this pointed remark by the Dean to refer to her race, ethnicity, and national origin, and was devastated by it.

Benedictine's retaliatory response to Plaintiff's report of being sexually assaulted three times prevented Plaintiff from graduating from Benedictine on time in May 2019 and otherwise prevented her from obtaining an education in the educational environment that other Benedictine Students enjoyed. Benedictine University's response to Plaintiff's report of sexual assault and

other harassment was less than what similarly-situated students of different races and national origin received upon making similar reports, and caused Plaintiff extreme emotional distress, pain, and suffering for which she continues to seek medical treatment.

## PARTIES

1.     Plaintiff Fatimah Totten is a mixed-race, half-black and half-white, 23-year-old, Muslim female and resident of County of DuPage, State of Illinois and a citizen of the United States who attended Benedictine University from 2016 to 2020.

2.     Defendant Benedictine University is a private institution of higher education which is incorporated in, has offices, and does business in the County of DuPage, Illinois. Upon information and belief, at all times relevant, Benedictine University was and is a recipient of federal financial assistance.

## JURISDICTION AND VENUE

3.     All of the relevant actions complained hereof took place in the County of DuPage, State of Illinois.

4.     This is an action for damages seeking to enforce rights secured by Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq*. ("Title IX") and Title VI of the Civil Rights Act of 1964 42 U.S.C. § 2000d *et seq*. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, §1343. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. §1367 over the state law claims of Counts V and VI because the state law claims are based upon the same nucleus of operative facts as the federal claims and because the exercise of supplemental jurisdiction would further judicial economy and the ends of justice.

5.     Venue is proper within this District and Division pursuant to 28 U.S.C. § 1391 as the

Plaintiff resides, and the Defendants reside, have offices and do business in the Northern District

of Illinois, Eastern Division, and the causes of action arose here.

## FACTS

I.     **Plaintiff enrolls as a student at Benedictine University and successfully takes courses there in pursuit of graduating in May 2019**.

6.     Benedictine University ("Benedictine") portrays itself as a small, private, institution of

higher education providing students with teaching and learning inspired by the Catholic

intellectual tradition, the social teaching of the Church and the principles of wisdom in the Rule of

St. Benedictine.

7.     Benedictine's Non-Discrimination Policy states that Benedictine "does not discriminate

against any person on the basis of race, creed, color, national or ethnic origin, sex, age, disability,

military or veteran status, marital status, citizenship, or any other characteristic protected by

applicable law".[2]

8.     Benedictine's Title IX Policy currently states that it:

> expects its Trustees, officers, faculty, staff and students to cultivate
> an environment that allows members of the University community
> to enjoy the full benefits of their work or learning experience. It is,
> therefore, the policy of Benedictine University to comply with Title
> IX of the Education Amendments of 1972, which prohibits
> discrimination based on sex (including sexual harassment and
> sexual violence) in the University's employment, educational
> programs and activities. Title IX also prohibits retaliation for
> asserting or otherwise participating in claims of sex discrimination.
> No member of the University community may engage in conduct
> which constitutes sexual harassment of a person in the United States.
> The University prohibits such conduct regardless of whether the
> alleged responsible individual is a student, a university employee or
> third party. The University will act promptly to restore or preserve
> equal access to the University's education program or activity and

---

[2] Benedictine University, Non-Discrimination Policy, available at https://www.ben.edu/about/non-discrimination.cfm

may sanction the responsible individual up to and including termination of employment, expulsion, and/or other sanctions[.] The University will also take steps, if and as appropriate, to remedy the effects of the violation for the complainant and the University community as may be necessary, and to prevent recurrence of the violation.[3]

9.      Benedictine further states that its policy is that "acts of sexual misconduct will not be tolerated". Benedictine defines sexual misconduct as "any attempted or actual act of non-consensual or forcible sexual touching".

10.     Dr. Tammy Sarver is Benedictine's Title IX Coordinator who, at all relevant times, was responsible for evaluating all Title IX Complaints to determine if alleged conduct falls within the definition of Sexual Harassment under Benedictine's Title IX Policy. Through this role, she also is responsible for other aspects of Benedictine's compliance with Title IX, including investigation and response to allegations of sexual misconduct, sexual harassment, sexual assault and other sex-based discrimination.

11.     Dean Marco Masini is Benedictine's Dean of Students who, at all relevant times, participated in Benedictine's Title IX program, including the investigation and response to allegations of sexual harassment, sexual assault, and other sex-based discrimination. Dean Marco Masini was, at all relevant times, responsible for overseeing Benedictine's response to reports of other violence, harassment and conflict between Benedictine students, including that taking place in Benedictine student housing.

12.     The Benedictine University Police is an agent of Benedictine whose mission "is to provide resources to ensure a safe campus environment and improve the quality of life within [the]

---

[3] Benedictine University, *Title IX – Policy Against Sexual Harassment*, available at
https://www.ben.edu/compliance/upload/NEW-TitleIX-Policy-FINAL-9152020.pdf

University community."[4] The Benedictine University Police provide Benedictine students with various services including campus area patrols, criminal investigations, accident reports, traffic control, traffic and parking enforcement and crime prevention.

13.     Plaintiff is a mixed-race, half-black and half-white, 23-year-old, Muslim female who attended Benedictine as a student from Fall 2016 to May 2020.

14.     In Fall 2016, Plaintiff enrolled as a student in the Undergraduate Degree program at Benedictine University and eventually decided to pursue a Bachelor's Degree in Business Administration with a major in Business Analytics.

15.     Between Fall 2016 and Fall 2018, Plaintiff successfully took courses at Benedictine in pursuit of her undergraduate degree, was recognized on the Dean's List for her outstanding grade point average, and was on track to graduate in May 2019. Plaintiff planned to use her good academic performance at Benedictine to help her enroll in a nursing school program after graduating.

### II.     Plaintiff is sexually assaulted three times by a peer Benedictine student, whom Benedictine knew to have previously committed sexual misconduct against another student.

16.     In or about September 2016, Plaintiff met a peer Benedictine student ("the Assailant") while working at Benedictine's annual Phonathon fundraising event.

17.     On August 18, 2018 the Assailant sexually assaulted Plaintiff at his home in Chicago, IL.

18.     On or about August 25, 2018, Plaintiff moved into a Benedictine student housing apartment on Benedictine's campus, which was assigned to her by Benedictine. She shared this apartment with another Benedictine student ("the Roommate"). Plaintiff's shared apartment was located directly above the Assailant's apartment, which was assigned to the Assailant by Benedictine.

---

[4] Benedictine University, *About Benedictine University Police*, available at https://www.ben.edu/student-life/police/index.cfm

19.     On or about October 14, 2018 the Assailant sexually assaulted Plaintiff in her apartment at Benedictine.

20.     On or about October 21, 2018 the Assailant sexually assaulted Plaintiff in her apartment at Benedictine.

21.     Upon information and belief, in approximately March 2018, months before the Assailant sexually assaulted Plaintiff, another female Benedictine student reported to Benedictine University that the Assailant sexually assaulted and/or committed other sexual misconduct against her.

### III.     Plaintiff reports to Benedictine that she had been sexually assaulted three times in violation of Title IX.

22.     On or about December 2, 2018, Plaintiff was returning to her Benedictine apartment with a friend when she noticed the Assailant standing at her door. The Assailant stole Plaintiff's apartment key, forced his way into her apartment, allowed her emotional support animal to run out into the hallway and proceeded to forcibly throw Plaintiff around and into the walls and doors of her apartment. Eyewitnesses called Benedictine University Police who escorted the Assailant to his apartment, located directly below Plaintiff's apartment.

23.     On or about December 3, 2018, Plaintiff reported the three sexual assaults described in Paragraphs 17, 19-20 to the Benedictine University Police. She also reported the incident in Paragraph 22. As part of her report, she included the name of the Assailant, the locations of the assaults and the other facts and circumstances surrounding the sexual assaults described in Paragraphs 17, 19-20 and the incident described in Paragraph 22.

24.     On or about December 3-4, 2018, Plaintiff reported to the Benedictine University Police that the Assailant had been harassing her sister via text message following the attack described in Paragraph 22. The Benedictine University Police responded to Plaintiff's safety concerns by telling her to "stop with the high school bull****". Subsequently, Plaintiff followed up with the

Benedictine University Police again to inquire about what they were doing to investigate her report of having been assaulted three times by the Assailant and what they would do to provide protection for Plaintiff from the Assailant. The Benedictine University Police told Plaintiff that if she did not like the way the Benedictine University Police were handling the situation that she should contact the Village of Lisle Police Department, which Plaintiff did. Upon learning that Plaintiff had contacted the Village of Lisle Police Department, the Benedictine University Police expressed anger at Plaintiff and accused her of trying to "throw them under the bus" by contacting the Village of Lisle Police Department.

25.     On or about December 10, 2018, Plaintiff began the process of filing a formal Title IX Complaint against the Assailant by coordinating meetings with Tammy Sarver and providing further detail and testimony on the three sexual assaults described in Paragraphs 17, 19-20.

26.     On January 17, 2019 Tammy Sarver emailed Plaintiff, copying Dean Marco Masini, to give her the Final Report on the investigation of her Title IX complaint. In her email, Tammy informed Plaintiff that her role was done.

27.     The January 17, 2019 Title IX Final Report ("The Title IX Report") concluded that Plaintiff did not consent to sexual relations with the Assailant on any of the three occasions described in Paragraphs 17, 19-20 and thus concluded that the Assailant had sexually assaulted Plaintiff on all three occasions. The Title IX Report recommended that the Assailant not be permitted to live on campus for his final semester (2019 Spring semester) at Benedictine. No other remedial measure was recommended.

**IV.     Benedictine ignores and/or inappropriately responds to Plaintiff's report of harassing and threatening conduct by her roommate at Benedictine, resulting in further harassment and violence.**

28.     On or about November 28, 2018, Plaintiff reported to a Benedictine administrator that the Roommate had, throughout the course of the Fall 2018 semester, repeatedly threatened Plaintiff,

recently had stabbed the door to Plaintiff's room with a knife, trashed their apartment and otherwise harassed Plaintiff. The Benedictine administrator advised Plaintiff that she should try to get through it by continuing to reside with the Roommate because it was the end of the semester, final exams were imminent and ongoing, and Plaintiff would soon be moving out of her apartment because winter break was approaching.

29.     On or about November 29, 2018, the Roommate entered Plaintiff's room in their shared apartment without Plaintiff's permission. The Roommate screamed at Plaintiff and threatened Plaintiff repeatedly with violence resulting in the Roommate's male guest restraining the Roommate. That same evening, the Benedictine University Police visited the apartment to investigate this incident. Plaintiff reported to the Benedictine University Police the Roommate's conduct and threats from earlier that evening and also reported the Roommate's previous threats including the stabbing of Plaintiff's door with a knife. The Benedictine University Police then arrested the Roommate. Upon leaving, a Benedictine University Police officer gave Plaintiff his business card and made a joke out of the situation by telling Plaintiff that she could collect and use the other business cards she had received from the Benedictine University Police officers to make a bulletin board, implying that it could be used as a decoration. This incident resulted in the relocation of the Roommate to an undisclosed apartment on Benedictine's campus, which Plaintiff subsequently learned was in close proximity to Plaintiff's apartment complex.

30.     In the week subsequent to November 29, 2018, Benedictine arranged for Plaintiff to leave her apartment so that the Roommate could gather her possessions which remained there. Benedictine failed to adequately supervise the Roommate and the Roommate made a mess in Plaintiff's apartment and stole and damaged Plaintiff's property. After reporting the theft to Dean

Marco Masini, no actions were taken by him or Benedictine to recover Plaintiff's stolen property or address Plaintiff's damaged property.

31.     On or about the early morning hours of December 1, 2018, the Roommate called the Benedictine University Police on her cell phone and represented to them that she was the Plaintiff, that she was harming herself, was at risk of suicide and needed to be hospitalized. The Benedictine University Police responded to the call by entering Plaintiff's apartment while she was sleeping and entering her room unannounced, terrifying Plaintiff.  Plaintiff was deeply humiliated and embarrassed that she was forced to get out of her bed in her underwear and had to expose herself and her uncovered head when she traditionally wore a hijab pursuant to her Muslim faith. Subsequently, the responding Benedictine University Police officer told Plaintiff that they knew that Plaintiff did not make the call because they understood that the phone number of the caller belonged to the Roommate. The Benedictine University Police, and subsequently Dean Marco Masini, made light of this dangerous harassment by characterizing the Roommate's call as a "butt-dial" (*i.e.,* when a person accidentally and unknowingly makes a call while her cell phone is in her pocket and the receiver of the call only hears white noise).

32.     On or about December 1, 2018, Plaintiff reported to the Benedictine University Police that the Roommate had stalked her and had scratched Plaintiff's vehicle with a key. Benedictine University Police responded by telling Plaintiff that if she did not feel safe she could leave Benedictine and go home. The Benedictine University Police took no further action to Plaintiff's knowledge.

33.     On or about December 21, 2018, Plaintiff was parked in her vehicle on campus at Benedictine when the Roommate approached Plaintiff's vehicle, physically banged her hands against the vehicle, and threatened Plaintiff by screaming that Plaintiff was not welcome there.

Plaintiff called the Benedictine University Police who drove to where the Plaintiff's and the Roommate's vehicles were located. The Benedictine University Police spoke with the Roommate first. Benedictine University Police then spoke with Plaintiff and told her that the Roommate had mistaken Plaintiff's vehicle for a friend's vehicle and took no further action.

34.    Subsequently after December 21, 2018, Benedictine administrators, including Dean Marco Masini, ended investigation into the Roommate's conduct over the course of the Fall 2018 semester and told Plaintiff that there would be no meeting to discuss Plaintiff's concerns because the Roommate no longer wished to meet with the Dean Marco Masini and Plaintiff. Benedictine took no further action to address or prevent the Roommate's threatening conduct toward Plaintiff on Benedictine's campus.

**V.    Benedictine retaliates against Plaintiff for filing her Title IX Complaint by preventing her from completing her education in an environment free from sexual assault and inadequately responds to Plaintiff's reports of violent harassment from her roommate.**

35.    The week of December 10, 2018 was Benedictine's Fall 2018 semester final exam period when Plaintiff was scheduled to take her final exams. While Benedictine's Title IX investigation of Plaintiff's complaint was ongoing, Benedictine did not offer or provide any meaningful extensions or other accommodations so that Plaintiff would have an opportunity to succeed on her final exams in an environment where Plaintiff was safe and free from sexual assault and sexual harassment.

36.    The week of December 10, 2018, while Benedictine's Title IX investigation of Plaintiff's complaint was ongoing, Plaintiff met with Dean Marco Masini, and inquired as to whether she could take classes online for the upcoming Spring 2019 semester. Plaintiff wanted to take classes online because she feared for her safety on campus, feared further sexual assault and harassment by the Assailant, and knew that an environment of fear, anxiety, and sexual harassment would

11

cause her to be unable to successfully complete her coursework and prevent her from graduating as scheduled in May 2019. Plaintiff was especially concerned for her safety on campus because the Assailant was also pursuing an undergraduate degree in Benedictine's Business program, which required him to be in the same buildings and enroll in many of the same courses as Plaintiff. Plaintiff did not receive an offer or information about taking courses online or about any other accommodations to assist her in completing the five classes she needed to take during the Spring 2019 semester to graduate in May 2019.

37.     During her meeting with Dean Marco Masini the week of December 10, 2018, Plaintiff also expressed that she wanted to take classes online because she feared further attacks and harassment from the Roommate, who was also pursuing an undergraduate degree in Benedictine's Business program, while they were on Benedictine's campus. Plaintiff did not receive an offer or information about taking courses online or about any other protections to assist her in completing the five classes she needed to take during the Spring 2019 semester to graduate in May 2019.

38.     In or about January 2019, Plaintiff met with Dean Marco Masini to inquire further about what protective measures Benedictine would take and what accommodations Benedictine would provide so that Plaintiff could complete her final semester at Benedictine without fear of further sexual harassment from the Assailant and further harassment and violence from the Roommate. Dean Marco Masini responded that the Assailant and the Roommate were still on track to graduate in May 2019 and would complete their final semester courses on Benedictine's campus accordingly. Dean Marco Masini did not provide or offer any accommodations or measures to enhance Plaintiff's safety and ability to take the five courses she needed to graduate in May 2019.

39.     Between December 17, 2018 and February 5, 2019, Plaintiff emailed, called and left voice messages for Benedictine faculty and administrators, including Dean Marco Masini, and sought

information about opportunities to take classes online. No one at Benedictine responded to Plaintiff's numerous communications, offered Plaintiff any opportunities to take online courses, or offered Plaintiff any other academic accommodations.

40.     On January 14, 2019, Benedictine's 2019 Spring Semester courses began but Plaintiff was not registered for any courses because she was awaiting opportunities to take courses online or other accommodations so that she could complete her courses in an environment free from sexual harassment.

41.     In February 2019, Plaintiff decided she wanted to take a temporary leave of absence from her education at Benedictine because Benedictine had not responded to her request for reasonable accommodations to take classes online and had not offered any other accommodations that would allow Plaintiff to complete her coursework in an environment free from sexual and other harassment. Plaintiff worried that if she did not take a formal leave of absence, there would be a hole in her transcript that would cause other academic institutions and possibly future employers to question her commitment to her education and her ability to be a good student or employee. Plaintiff informed a Benedictine faculty member of her decision to take a temporary leave of absence and inquired, again, if she could finish her five remaining courses online. Plaintiff subsequently learned, in 2020, that despite having submitted the required paperwork to Benedictine, Benedictine failed to officiate her leave of absence leaving an unexplained gap in her education on her transcript.

### VI.     Benedictine retaliates against Plaintiff by refusing to provide Plaintiff with the documents she needed to transfer to another institution.

42.     In March of 2019, Plaintiff decided that, because she had not received any response to her request to take courses online and was not offered any other accommodations, she would pursue the completion of her Business Administration degree at another educational institution.

43.     In March of 2019, Plaintiff repeatedly emailed various Benedictine administrators, including Dean Marco Masini, to ask for her Benedictine transcript, which she needed to apply to transfer to another educational institution to pursue finishing her Business Administration degree. Other than providing a link which led to an automated message telling Plaintiff that a hold on her account prohibited her transcript request from being processed, Plaintiff received no response or other instruction as to how she could obtain her transcript.

44.     On March 25, 2019, Dean Marco Masini responded to one of Plaintiff's many inquiries to propose a meeting. Dean Marco Masini subsequently indicated that the purpose of the meeting would be to share steps as to how Plaintiff could obtain her transcript.

**VII.     Benedictine tells Plaintiff that it would have responded to her reports of sexual assault by the Assailant and violent harassment by the Roommate differently had Plaintiff been "a different kind of student".**

45.     On March 26, 2019, Plaintiff was on Benedictine's campus with her sister to visit friends when the Roommate screamed at her and threatened her. Plaintiff left Benedictine feeling terrified of the Roommate. Subsequently that evening, Plaintiff's mother received a call from the Benedictine University Police stating that Plaintiff and her sister were trespassing on Benedictine property and were now banned from Benedictine due to "girl drama". Plaintiff received no formal notice, explanation or opportunity to be heard on the subject of the incident and her ban from Benedictine.

46.     On March 27, 2019, Plaintiff's mother emailed Dean Marco Masini two times to request an urgent meeting to discuss Benedictine's Title IX investigation and response as well as Benedictine's treatment of Plaintiff in response to the Roommate's conduct. Defendant Marco Masini responded and suggested a March 28, 2019 meeting at his office on Benedictine's campus.

Plaintiff's mother replied to confirm the meeting and to ask that Dean Marco Masini guarantee her and Plaintiff's safety while on campus. Dean Marco Masini did not respond.

47.     On March 28, 2019 Plaintiff and her mother, who were wearing hijabs pursuant to their Muslim religion and ethnicity, met with Dean Marco Masini and his assistant at Benedictine. During the meeting:

  a.   Plaintiff and her mother asked Dean Marco Masini about the inadequate outcome of the Title IX investigation and asked why more remedial measures were not taken based on the findings of the Title IX Report to allow Plaintiff to complete her education in an environment free from sexual harassment. Dean Marco Masini stated that for other student-victims, all it takes is for one incident of sexual assault for a perpetrator to be dismissed from Benedictine's campus entirely but that the three sexual assaults perpetrated by the Assailant against the Plaintiff did not qualify for this treatment. Dean Marco Masini further stated that he was the decision-maker with regard to ultimate disciplinary action resulting from a Title IX investigation and that Benedictine ***does not*** have a no tolerance policy against students who commit sexual misconduct.

  b.   Plaintiff and her mother asked questions about Benedictine's inadequate response to the findings of the Title IX investigation and the Roommate's physical and verbal harassment of Plaintiff and inquired as to why no accommodations had been made to allow Plaintiff to take and succeed at her five remaining courses. Dean Marco Masini responded that Benedictine would have handled the responses to both her Title IX Complaint and her reports of the Roommate's conduct differently had Plaintiff "been a different kind of student". Plaintiff and her mother both understood

this comment to pertain to Plaintiff's race, ethnicity, religion and national origin. Plaintiff subsequently stopped wearing her hijab while at Benedictine in an effort to receive the same attention, accommodations, respect and level of protection received by other similarly-situated Benedictine students of different races, ethnicity and national origin.

c. Plaintiff and her mother asked questions regarding how Plaintiff could receive her transcript so that she could pursue her education elsewhere or what accommodations Benedictine could provide so that Plaintiff could return to campus to finish her degree in a safe environment free from sexual and other harassment. Dean Marco Masini had limited, non-substantive responses and Plaintiff noticed him doodling on his notepad. Dean Marco Masini did not provide or propose solutions to how Plaintiff could receive her transcript or how she could return to Benedictine to finish her degree without fear of further harassment.

48. On March 28, 2019, Plaintiff and Plaintiff's mother were exiting the Benedictine building after the meeting with Dean Marco Masini and his assistant when the Roommate pulled up to them in her vehicle and proceeded to scream at and threaten them. Plaintiff and Plaintiff's mother were so afraid that they were forced to go back inside a Benedictine building to find Dean Marco Masini, report what had happened to him and had to request a police escort back to their vehicle to ensure their safety.

49. Between March 28, 2019 and August 2019, despite continuing to contact Benedictine officials, Plaintiff was not offered and did not receive any accommodations to help her successfully complete her coursework and graduate as planned in May 2019. Plaintiff also did not receive

accommodations so that she could obtain her transcript and transfer to another institution to complete her degree there.

50.     Between approximately May 2019 and November 2019, collection agencies and collection attorneys, on behalf of Benedictine, demanded tuition and other educational expense payments from Plaintiff and threatened her with wage garnishment and legal action.

**VIII.    Plaintiff reluctantly completes her education at Benedictine, where Benedictine subjects her to more administrative roadblocks and forces her to take sub-standard courses.**

51.     In or about September 2019, having not received her transcript so that she could attend another institution to complete her degree and wanting to finish her degree as soon as possible so she could enter the workforce, Plaintiff reluctantly worked with Benedictine administrators and faculty to take classes at a community college. Benedictine approved the community college courses selected by Plaintiff, promising that they would apply toward her remaining Benedictine degree requirements. Plaintiff was not able to apply her Benedictine scholarship to help pay for those courses. Upon completion of those courses, Benedictine administrators and faculty told Plaintiff that they did not file paperwork officiating Benedictine's acceptance of the courses and indicated that the community college classes would not apply toward her degree requirements. Plaintiff was then forced to contact multiple Benedictine administrators to overcome Benedictine's significant error.

52.     By December 2019, Benedictine further informed Plaintiff that she would have to take the remaining courses she needed to complete her degree on Benedictine's campus during the Spring 2020 semester and that she should register for those courses accordingly. Plaintiff reluctantly agreed, even though she was fearful of being on Benedictine's campus, because she needed to complete her degree. When Plaintiff tried to register for courses for the Spring 2020 semester, Benedictine initially blocked her from registering.

53. During the Spring 2020 semester, Benedictine could not offer Plaintiff the courses that were traditionally associated with her degree, which forced Plaintiff to take sub-standard courses and deprived Plaintiff of the full educational benefits offered to other students in her degree program at Benedictine.

54. On May 31, 2020 Plaintiff was conferred her Bachelor of Business Administration from Benedictine.

## COUNT I
### Discrimination in Violation of Title IX of the Education Amendments of 1972 – Deliberate Indifference

55. Plaintiff incorporates by reference all allegations contained herein.

56. Upon information and belief, approximately eight months prior to when Plaintiff was first assaulted by the Assailant on Benedictine University's campus in October 2018, Benedictine University had actual knowledge that the Assailant sexually assaulted and/or committed other sexual misconduct against another female Benedictine student ("the victim").

57. Benedictine University, having actual knowledge of the Assailant's prior severe, pervasive and objectively offensive sexual assault and/or harassment of the victim, acted with deliberate indifference to Plaintiff's Title IX rights and subsequent Title IX Complaint of three incidents of sexual assault by the same Assailant by: (1) allowing the Assailant to remain on campus and live in the same apartment building as Plaintiff; (2) failing to take appropriate disciplinary action against the Assailant; (3) failing to provide any other safety measures; and (4) violating its own Title IX policy by tolerating sexual misconduct on its campus, all of which posed a direct threat to Plaintiff and other Benedictine University students' safety on campus and which caused Plaintiff to be vulnerable to subsequent incidents of sexual assault perpetrated by the Assailant on Benedictine University's campus as described in Paragraphs 19-20.

58.     Benedictine University's unreasonable and inadequate response to the victim's reports of sexual assault and/or other sexual misconduct approximately eight months before Plaintiff was sexually assaulted by the Assailant on Benedictine University's campus amounts to an official policy of sex discrimination.

59.     As a direct and proximate result of the foregoing, Plaintiff was denied or limited in her ability to participate in or benefit from the school's educational programs and activities on the basis of sex.

60.     As a direct and proximate result of the foregoing, Plaintiff suffered lost educational and employment benefits, emotional pain, suffering, personal embarrassment, humiliation, depression, anxiety, post-traumatic stress disorder, loss of enjoyment of life and caused her to incur and endure medical bills.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

a.  Enter judgement in favor of Plaintiff and against Defendant Benedictine University;

b.  Declare Defendant Benedictine University's conduct in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681;

c.  Order permanent injunctive relief requiring Defendant Benedictine University to immediately revise and remedy its Title IX policies to eliminate the hostile educational environment experienced by Benedictine University students who complain of sexual misconduct;

d.  Award Plaintiff with money reasonably calculated to compensate her for all monetary damages sustained as a result of the discrimination by Defendant Benedictine University;

e.  Award Plaintiff punitive damages;

f.   Award pre-judgment interests and costs;

g.   Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; and

h.   Award any such other and further relief as it may deem just and equitable.

## COUNT II
**Discrimination in Violation of Title IX of the Education Amendments of 1972 – Retaliation**

61.   Plaintiff incorporates by reference all allegations contained herein.

62.   Plaintiff reported to Benedictine University, including the Benedictine University Police, a sexual assault by the Assailant, a Benedictine University student, at his home in violation of her right to an educational environment free from sex discrimination under Title IX.

63.   Plaintiff reported to Benedictine University, including the Benedictine University Police, two incidents of sexual assault by the Assailant, a Benedictine University student, on Benedictine University's campus, in violation of her right to an educational environment free from sex discrimination under Title IX.

64.   Benedictine University, including the Benedictine University Police, had actual knowledge of the Assailant's three incidents of sexual assault perpetrated against Plaintiff, the name of the Assailant, and the details of the sexual assaults and violence.

65.   The acts of sexual harassment described in Paragraphs 17, 19-20 and above, and a Plaintiff reported them to Benedictine University, were so severe, pervasive, and objectively offensive that they deprived Plaintiff of access to educational opportunities and benefits.

66.   Plaintiff engaged in legally protected activity when she reported and filed a Title IX Complaint of the three sexual assaults by the Assailant, a Benedictine University student, both on and off Benedictine University's campus to Benedictine University administrators, agents and the Benedictine University Police.

67.     After Plaintiff reported the three Title IX violations described in Paragraphs 17, 19-20 and above, Benedictine University, including the Benedictine University Police, acted with deliberate indifference to Plaintiff's Title IX Complaint and took materially adverse action against and retailed against Plaintiff by:

   a.   Violating its own zero tolerance Title IX policy, as described in Paragraphs 8-9, by tolerating sexual misconduct on its campus.

   b.   Failing to provide Plaintiff with reasonable accommodations to the continued trauma of seeing her assailant on campus while her Title IX Complaint was under investigation.

   c.   Failing to provide Plaintiff with reasonable accommodations as measures to lessen the hostile educational environment on Benedictine University's campus.

   d.   Failing to provide Plaintiff with reasonable accommodations so that she could complete and succeed in her course work.

   e.   Violating its own Title IX policy by failing to provide Plaintiff with reasonable accommodations that would have allowed Plaintiff to complete and succeed in her course work.

   f.   Failing to provide Plaintiff with reasonable accommodations, threatening her scholarship and ability to access financial aid.

   g.   Failing to provide Plaintiff with reasonable accommodations so that she could obtain her transcript and other documents preventing Plaintiff from completing her education at another institution and forcing her to return to Benedictine to complete her undergraduate degree.

h.  Failing to take the required administrative action to officiate Plaintiff's requested temporary leave of absence, threatening and preventing Plaintiff's ability to complete her education at another institution and reducing Plaintiffs' ability to receive educational and employment opportunities.

i.  After preventing Plaintiff from graduating on time in May 2019, publicizing photos of the May 2019 graduation that prominently featured the Assailant graduating, deepening Plaintiff's feeling of retaliation and anxiety and further injuring Plaintiff.

j.  Offering Plaintiff sub-standard course options when, because Benedictine University prevented her from completing her education at another institution, Plaintiff had to return to Benedictine University to complete her degree despite the hostile educational environment on Benedictine University's campus.

k.  Failing, initially, to take necessary administrative action to allow community college courses, previously approved by Benedictine University, to apply towards Plaintiffs' Benedictine graduation requirements.

l.  Continuing to refer to the three incidents of sexual assault as "alleged" incidents, despite having concluded in its own Title IX investigation that the three sexual assaults occurred, deepening Plaintiff's feeling of retaliation and anxiety and further injuring Plaintiff.

m.  Responding to Plaintiff's report of the three incidents of sexual assault with inflammatory and offensive comments.

n.  Harassing Plaintiff with threatening communications from collection agencies and collection attorneys.

o.  Failing to respond to Plaintiff's report of the three incidences of sexual assault in the same or similar manner as similarly situated Benedictine students of different races and national origin.

68.  Benedictine University's deliberate indifference and retaliatory responses to Plaintiff's three reports of sexual assault in violation of Title IX amounts to an official policy of sex discrimination.

69.  Benedictine University acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights and intentionally discriminated against Plaintiff on the basis of her sex by denying her access to Benedictine University's campus, programs and activities.

70.  As a direct and proximate result of the foregoing, Plaintiff was denied or limited in her ability to participate in or benefit from the school's educational programs or activities on the basis of sex.

71.  As a direct and proximate result of the foregoing, Plaintiff suffered lost educational and employment benefits, emotional pain, suffering, personal embarrassment, humiliation, depression, anxiety, post-traumatic stress disorder, loss of enjoyment of life and caused her to incur and endure medical bills.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

a.  Enter judgement in favor of Plaintiff and against Defendant Benedictine University;

b.  Declare Defendant Benedictine University's conduct in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681;

c.  Order permanent injunctive relief requiring Defendant Benedictine University to immediately revise and remedy its Title IX policies to eliminate the hostile

23

educational environment experienced by Benedictine University students who complain of sexual misconduct;

d.  Award Plaintiff with money reasonably calculated to compensate her for all monetary damages sustained as a result of the discrimination by Defendant Benedictine University;

e.  Award Plaintiff punitive damages;

f.  Award pre-judgment interests and costs;

g.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; and

h.  Award any such other and further relief as it may deem just and equitable.

## <u>COUNT III</u>
### Race Discrimination in Violation of Title VI of the Civil Rights Act of 1964

72.  Plaintiff incorporates by reference all allegations contained herein.

73.  Plaintiff is a mixed-race, half-black and half-white, 23-year-old, Muslim female.

74.  Plaintiff wore a hijab until approximately April 2019 when she stopped wearing it while on Benedictine's campus out of fear of further discrimination based on race and national origin.

75.  Plaintiff was treated less favorably by Benedictine University, including the Benedictine Police, than similarly-situated students of a different race, including through Benedictine University's conduct alleged herein and as follows:

a.  A Benedictine University administrator's statement to Plaintiff and Plaintiff's mother, as alleged in Paragraph 48(b), that Plaintiff would have received a different response to her reports of sexual assaults by the Assailant in violation of Title IX and harassment by the Roommate had Plaintiff "been a different kind of student". Plaintiff and her mother both understood this comment to pertain to Plaintiff's race, ethnicity, and national origin.

24

b. Benedictine University's deliberate indifference toward Plaintiff's federally protected right to an education free from sexual discrimination by causing her to be vulnerable to three incidents of sexual assault perpetrated against her by the Assailant.

c. Benedictine University's deliberate indifference toward and retaliation against Plaintiff in response to her Title IX Complaint wherein Plaintiff reported that she had been sexually assaulted three times by the Assailant.

d. Benedictine University's, including the Benedictine University Police's, failure to take actions to prevent the Roommate from coming into contact with Plaintiff resulting in further threats toward and physical confrontation of Plaintiff while on Benedictine's campus.

e. Benedictine University's failure to investigate Plaintiff's report that the Roommate had stolen and damaged her property.

f. Benedictine University Police's statement to Plaintiff's mother that Plaintiff was banned from Benedictine due to "girl drama".

g. Benedictine University's, including the Benedictine University Police's, inflammatory and offensive comments made in response to Plaintiff's reports of the Roommate's conduct as alleged herein.

76. Through the actions set forth more fully above, Benedictine University acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights and intentionally discriminated against Plaintiff on the basis of her race by denying her access to Benedictine University's campus, programs and activities.

77.     As a direct and proximate result of Benedictine University's discriminatory treatment, Plaintiff has suffered irreparable injury and was deprived of higher education, suffered ill health, pain, suffering, humiliation, monetary loss, and reputational loss.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

a.  Enter judgment in favor of Plaintiff and against Defendant Benedictine University;

b.  Declare that Defendant Benedictine University engaged in discriminatory conduct against Plaintiff in violation of Title VI of the Civil Rights Act of 1964;

c.  Award Plaintiff with money reasonably calculated to compensate her for all monetary damages sustained as a result of the discrimination by Defendant Benedictine University;

d.  Award Plaintiff punitive damages;

e.  Award pre-judgment interests and costs;

f.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; and

g.  Award any such other and further relief as it may deem just and equitable.

## **COUNT IV**
### **National Origin Discrimination in Violation of Title VI of the Civil Rights Act of 1964**

78.     Plaintiff incorporates by reference all allegations contained herein.

79.     Plaintiff is a mixed-race, half-black and half-white, 23-year-old, Muslim female.

80.     Plaintiff wore a hijab until approximately April 2019 when she stopped wearing it while on Benedictine's campus out of fear of further discrimination based on race and national origin.

81.     Plaintiff was treated less favorably by Benedictine University, including the Benedictine Police, than similarly-situated students of a different national origin, including through Benedictine University's conduct alleged herein and as follows:

a.  A Benedictine University administrator's statement to Plaintiff and Plaintiff's mother, as alleged in Paragraph 48(b), that Plaintiff would have received a different response to her reports of sexual assaults by the Assailant in violation of Title IX and harassment by the Roommate had Plaintiff "been a different kind of student". Plaintiff and her mother both understood this comment to pertain to Plaintiff's race, ethnicity, and national origin.

b.  Benedictine University's deliberate indifference toward Plaintiff's federally protected right to an education free from sexual discrimination by causing her to be vulnerable to three incidents of sexual assault perpetrated against her by the Assailant.

c.  Benedictine University's deliberate indifference toward and retaliation against Plaintiff in response to her Title IX Complaint wherein Plaintiff reported that she had been sexually assaulted three times by the Assailant.

d.  Benedictine University's, including the Benedictine University Police's, failure to take actions to prevent the Roommate from coming into contact with Plaintiff resulting in further threats toward and physical confrontation of Plaintiff while on Benedictine's campus.

e.  Benedictine University's failure to investigate Plaintiff's report that the Roommate had stolen and damaged her property.

f.  Benedictine University Police's statement to Plaintiff's mother that Plaintiff was banned from Benedictine due to "girl drama".

g. Benedictine University's, including the Benedictine University Police's, inflammatory and offensive comments made in response to Plaintiff's reports of the Roommate's conduct as alleged herein.

82. Through the actions set forth more fully above, Benedictine University acted intentionally, willfully, and/or with reckless and callous indifference to Plaintiff's federally protected rights and intentionally discriminated against Plaintiff on the basis of her national origin by denying her access to Benedictine University's campus, programs and activities.

83. As a direct and proximate result of Benedictine University's discriminatory treatment, Plaintiff has suffered irreparable injury and was deprived of higher education, suffered ill health, pain, suffering, humiliation, monetary loss, and reputational loss.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

h. Enter judgment in favor of Plaintiff and against Defendant Benedictine University;

i. Declare that Defendant Benedictine University engaged in discriminatory conduct against Plaintiff in violation of Title VI of the Civil Rights Act of 1964;

j. Award Plaintiff with money reasonably calculated to compensate her for all monetary damages sustained as a result of the discrimination by Defendant Benedictine University;

k. Award Plaintiff punitive damages;

l. Award pre-judgment interests and costs;

m. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; and

n. Award any such other and further relief as it may deem just and equitable.

## COUNT V
### Negligent Infliction of Emotional Distress

84.     Plaintiff incorporates by reference all allegations contained herein.

85.     At all relevant times, Benedictine University, through its agents, had a duty to exercise a reasonable degree of care in voluntarily providing security services for the protection, benefit and safety of the Plaintiff while she was on Benedictine University's campus on which Plaintiff reasonably relied.

86.     In addition to the duty that Benedictine University voluntarily undertook to provide campus security to Plaintiff, Benedictine University also owed Plaintiff a duty to use reasonable care for her safety on campus while on Benedictine University's campus because, as a student enrolled at Benedictine University and paying tuition to Benedictine University, Plaintiff was a business invitee.

87.     Notwithstanding said duty, Benedictine University, through its agents including the Benedictine University Police, committed one or more of the following negligent acts and/or omissions:

  a.   Failed to take reasonable security measures for the protection of Plaintiff in her residence on campus and while she was attending meetings and courses on campus;

  b.   Failed to take reasonable security measures for the protection of Plaintiff while she was on campus and in parking lots on campus;

  c.   Failed to timely and adequately respond to, prevent or intercede the events alleged in Paragraphs 29-33, 45, and 48 of this Complaint;

  d.   Failed to equip Plaintiffs' residence on Benedictine University's campus with electronic security systems or video camera surveillance;

e. Responding to Plaintiff's report of stalking and physical damages to her vehicle by the Roommate by ignoring Plaintiff and telling her to go home;

f. Responding to Plaintiff's report of the Roommate impersonating her in a phony phone call to the Benedictine University Police by labeling the call as a "butt dial" and failing to take any action to prevent further incident or investigate further;

g. Retaliating against Plaintiff's choice to exercise her right to inquire with the Village of Lisle Police department about the investigation of the three sexual assaults perpetrated by the Assailant against the Plaintiff by accusing her of throwing the Benedictine University Police under the bus and otherwise showing hostility toward Plaintiff.

88. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff suffered severe emotional distress contemporaneous with the Roommate physically attacking and impacting Plaintiff's vehicle. Plaintiff's severe emotional distress included an immediate and instinctive emotional response which was severe and extreme and included long lasting traumatic neurosis and caused her to incur and endure medical bills, pain and suffering, mental anguish and loss of normal life.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against Benedictine University in an amount to be determined by a trier of fact.

## <u>COUNT VI</u>
### Intentional Infliction of Emotional Distress

89. Plaintiff incorporates by reference all allegations contained herein.

90. Benedictine University's conduct herein, including that described in further detail in Paragraphs 24, 28-34, 45, 47, and 50 of this Complaint, was extreme and outrageous.

91.    Benedictine University, through its extreme and outrageous conduct, recklessly and/or consciously disregarded the probability of causing emotional distress.

92.    As a direct and proximate result of the foregoing conduct, Plaintiff suffered severe and extreme emotional distress in the form of fear, horror, worry, shame, anxiety, long lasting traumatic neurosis, post-traumatic stress disorder and depression.

WHEREFORE Plaintiff respectfully requests that judgment be entered in her favor and against Benedictine University in an amount to be determined by a trier of fact.

DATED: October 14, 2020                                    Respectfully Submitted,

                                                          _s/ Margaret E. Galka_

                                                          Margaret E. Galka
                                                          One of Plaintiff's Attorneys


Margaret E. Galka (#6329705)
Shawn M. Collins (#6195107)
THE COLLINS LAW FIRM, P.C.
1770 Park St., Ste. 200
Naperville, IL 60563
630-527-1595
mgalka@collinslaw.com
shawn@collinslaw.com

*Attorneys for Plaintiff*