**IN THE UNTED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FATIMAH TOTTEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-06107 |
| | ) | |
| v. | ) | Hon. Harry D. Leinenweber |
| | ) | Judge Presiding. |
| BENEDICTINE UNIVERSITY, | ) | |
| | ) | |
| | ) | Plaintiff Demands |
| Defendant. | ) | Trial By Jury |

## MOTION FOR FORENSIC EXAMINATION OF BENEDICTINE'S FILES

Plaintiff Fatimah Totten moves pursuant to Federal Rules of Civil Procedure 26 and 37 for a neutral forensic examination of Defendant Benedictine University's ("Benedictine") files.

## WHY THE MOTION SHOULD BE GRANTED

Benedictine refuses to produce responsive and important documents requested over a year ago, which the Court ordered produced, and which the university's own witnesses testified exist, including documents its own retention policy requires it to preserve. Benedictine refuses to explain why. There are only a few options: (a) Benedictine lacks the competence to conduct ESI discovery; (b) Benedictine spoliated evidence; (c) Benedictine is concealing evidence; or (d) the witnesses are lying. The Court should order a neutral forensic examination to prevent Benedictine from taking advantage of its own discovery failures.

Plaintiff is a former Benedictine student. In December 2018, she made a Title IX complaint that she was raped three times by another student (the "Assailant"). Benedictine found the Assailant responsible for the rapes. Yet the only "sanction" imposed on him was that he not be permitted to reside on campus. He remained welcome at Benedictine to take classes and attend social events. Plaintiff alleged, among other things, that Benedictine violated Title IX by making her vulnerable to the three rapes, because Benedictine received reports from other students

1

accusing the Assailant of sexual misconduct. Those reports included a February 2018 Title IX investigation.

Plaintiff issued her document requests over a year ago, in March 2022. Benedictine's response was deficient, leading to a series of discovery conferences, supplemental productions, and eventually a motion to compel. (ECF 52.) The Court granted that motion on January 3, 2023 ("Order" ECF 56.) Benedictine's supplemental productions were still deficient, leading to more discovery conferences and Benedictine's assurances that its production was complete. Having no choice but to trust Benedictine had finally complied with the Court's Order, Plaintiff proceeded to depose seven current and former Benedictine employees.

Under oath, Benedictine witnesses identified more than 50 responsive and important documents that exist in Benedictine's files but that it failed to produce. Those documents include materials regarding: the February 2018 Title IX investigation; Plaintiff's report to the Benedictine University Police Department ("BUPD"); and meetings with Plaintiff about her Title IX complaint. Many of these documents are subject to the university's "permanent" document retention policy.

After the depositions, Plaintiff's counsel compiled the deposition testimony and requested Benedictine to produce the documents. (Ex. 1, 3/14/23 Letter.)[1] Benedictine eventually produced approximately 15 of the 50 documents, but still has not produced at least 35 of the documents the witnesses testified exist, including the February 2018 Title IX investigation materials.

The few documents Benedictine belatedly *did* produce include obviously responsive and relevant materials, such as emails regarding Plaintiff's Title IX complaint. There is no reason why these documents were produced a year after they were requested, months after the Court's Order

---

[1] In the interest of protecting privacy, Plaintiff redacted some student-nonparty identifying information where it appears in exhibits to this motion. If the Court wishes, Plaintiff can file these exhibits without redactions under seal or provide them *in camera*.

granting the motion to compel, and only after depositions in which a witness testified they exist and after Plaintiff's counsel again pursued them. And Benedictine has not provided any reason.

What has come to light are numerous, inexcusable failures in Benedictine's discovery process that show the 35 unproduced documents are likely "just the tip of the iceberg." Despite the well-known pitfalls of unguided self-collection by document custodians, that is primarily what happened here. Yet, if that was the only problem, it should have been cured by now. Not so. Any other belated searches, including those performed by Benedictine's IT department, have not cured Benedictine's failure to comply with its discovery obligations and this Court's Order. Benedictine's counsel cannot even say what ESI sources are available to search. This demonstrates, at best, a lack of competence. Whatever the motive, Benedictine has not complied with its discovery obligations and this Court's Order.

It is not Benedictine's "option to simply react to plaintiff's fortuitous discovery of the existence of relevant documents by making disjointed searches, each time coming up with a few more documents, and each time representing that that was all they had." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 935 (N.D. Ill. 2021). The only way that Benedictine's "catch-me-if-you-can" discovery game will timely end is by deploying a neutral forensic expert to examine Benedictine's ESI and other documents.

## BACKGROUND

### A. The Court grants Plaintiff's motion to compel.

More than a year ago, on March 8, 2022, Plaintiff served her document requests. Benedictine's initial production was significantly deficient. Plaintiff's counsel met with Benedictine's counsel three times after which Benedictine made supplemental productions. Benedictine's production continued to be incomplete, so Plaintiff filed a motion to compel. (ECF 52). In the motion Plaintiff asked the Court to compel production of, among other things:

- "Emails, documents, records and other correspondence (e.g., emails providing information concerning Title IX rights) between Benedictine and Benedictine students, other than Plaintiff, concerning their complaints that the same Assailant that raped Plaintiff previously committed sexual misconduct towards them." (ECF 52 at 10, ¶ 2.c.)

- "All documents reflecting correspondence between Benedictine and the Assailant that raped Plaintiff concerning the Title IX complaints against him made by students other than Ms. Totten." (*Id.* at 11, ¶ 2.f.)

- All documents regarding "Plaintiff's Title IX complaint against the Assailant and Benedictine's investigation of, internal deliberations concerning, and any actions taken in response thereto." (*Id.* at 4, citing Req. No. 3.)

The Court granted that motion on January 3, 2023 ("Order" ECF 56.)

**B. Benedictine violates the Court's Order and fails to produce documents that its own witnesses testified exist.**

Despite the Court's Order, Benedictine's supplemental productions continued to be deficient. Plaintiff's counsel met with Benedictine's counsel two more times, after which Benedictine made more supplemental productions. (Ex. 2, 1/30/23 Email; Ex. 3, 2/2/23 Email.) Having no choice but to trust that Benedictine finally complied with this Court's order, Plaintiff proceeded to depose seven of Benedictine's current and former employees. ***Shockingly, these witnesses identified more than 50 documents that exist in Benedictine's files but that Benedictine did not produce*** despite their obvious responsiveness to Plaintiff's requests and this Court's Order explicitly requiring Benedictine to produce them.

On March 14, 2023, Plaintiff's counsel sent a letter to Benedictine's counsel again requesting and specifically describing and categorizing these documents and citing the corresponding witness testimony that the documents exist. (Ex. 1, 3/14/23 Letter.)

For example, one category of documents concerns Benedictine's February 2018 Title IX investigation of reports by other students of sexual misconduct by the Assailant. (*Id.* at 5.) These

documents include materials prepared by Benedictine's former Title IX coordinator, Erica Conrad

("Conrad"), who testified as to their existence:[2]

- The unsigned final Title IX report related to Conrad's February 2018 Title IX investigation concerning the Assailant. (*Id.* at 5, citing Ex. 4, Conrad Dep. at 87.)

- Three different versions of the February 2018 Title IX report containing the signatures of former Benedictine President Michael Brophy, former in-house counsel Nancy Stoecker, and Dean Marco Masini. (*Id.* at 5-6, citing Ex. 4 Conrad Dep. at 94-95, 100-102.)

- Six separate emails from Conrad to Michael Brophy, Nancy Stoecker, Marco Masini, the Assailant, the Complainant(s) and the Title IX co-investigator. (*Id.* at 6-8, citing Ex. 4 Conrad Dep. at 86, 94, 100-102 110-113.)

- Conrad's hard copy file and electronic file concerning her February 2018 Title IX investigation to which Dr. Tammy Sarver has access and Nancy Stoecker controls. According to Conrad, the file contains, at least, her summary of interviews, handwritten notes, the final report and any related police reports. (*Id.* at 6, citing Ex. 4 Conrad Dep. at 77, 84-85, 97-100.)

- At least six separate emails from Conrad to each of the individuals she interviewed as part of her February 2018 Title IX Investigation containing her written statements summarizing their interviews so that they may review the statements for accuracy. (*Id.* at 6-8, citing Ex. 4 Conrad Dep. at p. 77-78. 80-82, 84, 97.)

A second category concerns when and how Dean of Students Marco Masini and current

Title IX coordinator Dr. Tammy Sarver learned of Plaintiff's report to the BUPD that the Assailant

raped her three times. *Id.* at 4-5. Dr. Sarver testified that these documents exist, including:

- Emails to Dr. Tammy Sarver from and/or copying Benedictine Dean of Students Marco Masini containing information about Plaintiff's report to the BUPD that she had been raped by the Assailant and attaching a December 3, 2018 BUPD report concerning Plaintiff's report. (*Id.* at 4, citing Ex. 5, Sarver Dep. at 98-99, 147-148.)

A third category of documents are emails between Yvette Knox, former assistant to

Benedictine's current President Charles Gregory, and Dean Marco Masini regarding two meetings

with Plaintiff regarding her Title IX complaint. (*Id.* at 4.) Knox testified that these materials exist:

---

[2] Ms. Conrad is now known as Erica Padish-Hoebing, and is identified as such in her deposition.

- an email Knox sent to President Gregory and Marco Masini containing notes from a meeting she had in her office with Plaintiff regarding Benedictine's handling of her report of having been raped and her requests for resources. (*Id.* at 4, citing Ex. 6, Knox Dep. at 51-52, 56.)

- an email Knox sent to President Gregory and Marco Masini with her notes concerning a March 2019 meeting about, among other things, Plaintiff's concerns with Benedictine's handling of Ms. Totten Title IX complaint. (*Id.* at 5, citing Ex. 6, Knox Dep. at 135-37.) It is at this meeting that Plaintiff alleges Mr. Masini told her that Benedictine would have handled her Title IX investigation differently had she been a different kind of student.

After another meeting with counsel, Benedictine made supplemental productions on March 27 and March 31, 2023. Benedictine finally produced approximately 15 of the 50 documents identified in the letter and which Benedictine's witnesses testified exist. But Benedictine still has not produced at least 35 of those 50 documents, including materials regarding the February 2018 Title IX investigation and Knox's emails.

### C. Benedictine's belated and incomplete document productions prove Benedictine's widespread failure to comply with its discovery obligations and the Court's Order.

Every single document belatedly produced by Benedictine in March should have been produced last year in response to Plaintiff's initial March 8, 2022 discovery requests. Failing that, the documents should have been produced in response to the Court's Order granting Plaintiff's motion to compel. And certainly the documents should have been produced before depositions.

These untimely produced documents include, for example: emails between Benedictine's Title IX Coordinator Dr. Sarver and her co-investigator regarding Plaintiff's Title IX complaint; and emails between the Assailant and Dean Marco Masini regarding Plaintiff's Title IX complaint.[3] There is no reasonable explanation as to why these highly responsive documents were not produced last year in response to Plaintiff's March 2022 requests, or this Court's Order in January granting Plaintiff's motion to compel. (*See* ECF 52, motion to compel at 10-11; Ex. 7,

---

[3] Benedictine has designated these documents confidential, so they are not attached to this motion. If the Court wishes, Plaintiff can file them under seal or provide them *in camera*.

8/26/22 Letter at 2-3.) And Benedictine has not provided one. To the contrary, at the parties' April 12, 2023 meeting, Benedictine's counsel indicated they had no evidence that the documents had been destroyed. Further, many of the responsive documents that Benedictine has failed to produce should have been retained by Benedictine pursuant to its own document retention policy. For example, that policy requires that the Presidents' "Correspondence," "memos," "legal documents," and the "President's file document on significant subjects" have a "permanent" retention period and are to be maintained in Benedictine's "Archives." (Ex. 8. Doc. Ret. Policy at 6-7.) Yet, Benedictine now claims it cannot even locate the emails of former President Brophy, among others. (Ex. 9, 4/20/23 Letter at 2.)[4]

Benedictine's failures show that this is a symptom of a larger disease. This is a problem concerning much more than 35 documents. The problem demonstrates a fundamental lack of competence and integrity in Benedictine's entire process for identifying, preserving, and producing responsive and relevant documents.

### D. Further cause for alarm – Benedictine's broken discovery process.

Benedictine's mostly incomplete answers to Plaintiff's questions about Benedictine's discovery process are further cause for alarm. For example:

Benedictine has not identified all of its document custodians. Missing from the limited custodian list that Benedictine provided are important witnesses including, for example, Dr. Vincent Gaddis, a Benedictine professor interviewed by Conrad as part of the February 2018 Title IX investigation). (*See* Ex. 10, 3/31/23 Letter.) Further, Benedictine's counsel has not identified

---

[4] Although Benedictine still has not provided any explanation as to why it has not produced these documents, Benedictine's counsel informed Plaintiff that Benedictine could not locate the "full" email-boxes for Erica Conrad, former President Michael Brophy, and former In-House Counsel Nancy Stoecker. (Ex. 9, 4/20/2023 Letter.) Benedictine has not explained what is meant by "full" email-boxes or why it could not locate them.

whether they consulted with Benedictine's document custodians to identify sources of documents and establish search protocols.

Instead, Benedictine's own employees primarily looked for responsive documents, *i.e.*, a self-collection of documents. (Ex. 9, 4/20/23 Email ("individual custodians were instructed to review their own emails, electronic files, and hard copy files for responsive information").) The only instruction they were initially given was to search for documents related to this case. (*See, e.g.*, Ex. 13, 2/6/23 Email ("my client has been instructed to send me any and all correspondence regarding this case").) At the March 20, 2023 meeting between the parties, Benedictine's counsel stated that the document custodians were not instructed to use search terms. [5]

Benedictine has not provided any information in response to Plaintiff's question: "Does Benedictine have servers, networks and/or shared-electronic databases (collectively, 'databases') available to be searched for responsive electronic documents?" (Ex. 1, 3/14/23 Letter at 9.) Benedictine has not provided any information despite Plaintiff's counsel again asking at the March 20, 2023 and April 12, 2013 meetings with Benedictine's counsel.

Benedictine's counsel agreed to provide a copy of Benedictine's litigation hold notice and stated that it was "attached" to their March 31, 2023 letter. (Ex. 10, 3/31/23 Letter ("Said litigation hold is attached.") But the notice was not "attached." When Plaintiff's counsel asked for it again, Benedictine back-pedaled and claimed the notice was privileged. (Ex. 11, 4/25/2023 Email.)

### E. Benedictine refuses to engage a neutral forensic examiner.

In light of Benedictine's repeated failure to produce documents its own witnesses admit exist and its failure to comply with discovery obligations, Plaintiff requested Benedictine to agree to have a mutually agreeable neutral forensic examiner search for documents and determine

---

[5] Benedictine's IT department subsequently assisted with limited, deficient, searches. (Ex. 9, 4/20/2023 Letter.)

whether the documents exist. (Ex. 12, 4/7/23 Letter.) Counsel met on April 12, 2023, and Benedictine refused, prompting Plaintiff to bring this motion and seek relief from the Court. [6]

## LEGAL STANDARDS

If a party "fails to obey an order to provide or permit discovery" the court may issue sanctions. Fed. R. Civ. P. 37(b)(2)(A). Additionally, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). This Court also has "inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016).

If "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may," among other things, presume that the lost information was unfavorable to the party or enter a default judgement. Fed. R. Civ. P. 37(e).

Forensic examination is a sanction warranted where "the moving party can actually prove that the responding party has concealed information *or* lacks the expertise necessary to search and retrieve all relevant data." *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 7049914, at *2 (N.D. Ill. Dec. 23, 2019).

---

[6] This April 12, 2023, 9:00am, telephone consultation between Plaintiff's counsel Margaret Galka and Benedictine's counsel Carter Frambes and Molly Thompson satisfies Local Rule 37.2.

## <u>ARGUMENT</u>

**I.      Benedictine repeatedly failed to identify, collect and produce responsive documents in violation of its discovery obligations and this Court's Order.**

From the outset of this litigation, Benedictine and its lawyers were "expected to act in good faith in complying with their discovery obligations." *Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125, 1132 (7th Cir. 2002). While some conferring amongst parties on missing documents occurs in almost every case, Benedictine's discovery conduct here is beyond the pale.

**A.      Benedictine failed to ensure that all sources of discoverable information were timely and completely identified and adequately searched.**

Benedictine had "the responsibility to take affirmative steps to ensure that all sources of discoverable information were identified, searched, and reviewed so that complete and timely responses to discovery requests could be provided." *U&I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667, 676 (M.D. Fla. 2008). To satisfy that duty, Benedictine's counsel must vigorously interview their client and document custodians to obtain all relevant information. *DR Distributors*, 513 F. Supp. 3d at 923-27. But Benedictine and its counsel did not do this. Forensic examination is required to ensure that Benedictine has identified all sources of responsive documents.

**B.      Benedictine's counsel violated their discovery obligations by leaving Benedictine's employees in charge of searching for responsive documents.**

Benedictine's counsel "have an obligation to investigate their clients' information management system thoroughly to locate potentially relevant and discoverable material, no matter how technically opaque that information system may appear. *Such an investigation goes well beyond simply asking the client for the relevant files and trusting that the client itself has a complete understanding of its own information technology structure.*" *Id.* at 927 (emphasis by the court). Counsel should not leave custodians to self-collect documents, especially ESI.

"ESI that is not identified or preserved cannot be produced. And even ESI that is identified and preserved may not be collected if clients are not properly counseled and supervised." *Id.* at 934. "Relying solely on the client to identify the universe of relevant information, without reasonable inquiry to verify that the client accurately captured that universe, can lead to sources of information being overlooked." *Id.* Without sufficient instruction and ongoing monitoring from counsel, clients may intentionally or inadvertently fail to preserve or even destroy responsive documents. *Id.* at 935-36. Indeed, "even when the client has identified all possible sources of relevant information . . . the client may not find or provide to counsel all responsive documents and ESI from those sources. Crafting effective searches of ESI can be challenging, even for counsel . . . . Therefore, effective custodian-conducted searches must give specific directions as to search terms and techniques." *Id.* at 936 (internal citations and quotations omitted).

Despite these well-known pitfalls, unguided self-collection is primarily what occurred here. Benedictine's individual document custodians were not even instructed to use any search terms. This demonstrates, at best, a lack of competence. And given what happened here, if that was the only problem, it should have been cured by now.

Yet, any other belated searches, including those performed by Benedictine's IT department as opposed to Benedictine's individual document custodians, have not cured Benedictine's failure to comply with its discovery obligations and this Court's Order. At least 35 critical documents still have not been produced, even though Benedictine's own witnesses testified they exist.

Further, it was not Benedictine's "option to simply react to plaintiff's fortuitous discovery of the existence of relevant documents by making disjointed searches, each time coming up with a few more documents, and each time representing that that was all they had." *DR Distributors,*

*LLC*, 513 F. Supp. 3d at 935 (quotation omitted). The only way to end Benedictine's discovery game is by deploying a neutral forensic expert to examine Benedictine's ESI and other documents.

### C. Benedictine's counsel violated their duty to understand Benedictine's ESI.

Benedictine's counsel "have a duty to know and understand their clients' ESI systems and storage." *Id.* at 927. Yet, Benedictine's counsel could not even identify what ESI systems Benedictine has available to be searched. Without a forensic examination, there is no reasonable assurance that all relevant sources of ESI have been identified and searched.

### D. Benedictine's discovery failures caused numerous important documents to be produced untimely – or not at all.

Plaintiff issued her document requests over a year ago. Plaintiff's counsel has – at least 10 times – specifically requested and met with Benedictine's counsel about important documents that Benedictine failed to produce. Yet, ***at least*** 35 documents – admitted under oath by Benedictine witnesses to exist – have either deliberately not been produced by Benedictine, despite even an Order from this Court, or have been destroyed by Benedictine in violation of its own document retention policy or its obligation to preserve evidence.

Benedictine has offered no explanation for why it has repeatedly failed to produce responsive documents its own witnesses testified exist and which this Court ordered it to produce. Therefore, presumably, the documents still exist but, because of Benedictine's and its counsel's violations of their discovery obligations, the documents have not been located or produced. A neutral forensic examination is required to ensure all responsive documents have been located and to evaluate whether documents have been destroyed.

### E. Benedictine has concealed the scope of its litigation hold notice.

Benedictine's discovery failures puts the adequacy of its litigation hold notice at issue. A litigation hold notice, "must contain enough information to adequately inform its intended

recipient of its discovery obligations under the circumstances . . . . At minimum, parties have a duty to preserve discovery materials in a reasonable manner and a sufficient hold notice should explain how to satisfy that duty." *DR Distributors,* 513 F. Supp. 3d at 930. Benedictine agreed to produce its litigation hold, but then changed its mind and claimed it was privileged. Benedictine's numerous discovery failures require examination of the notice. Benedictine's deficient productions and witness testimony show either non-compliant discovery or spoliation of evidence. *See Oleksy v. Gen. Elec. Co.*, 2011 WL 3471016, at *6 (N.D. Ill. Aug. 8, 2011) (ordering production of litigation hold notice in light of spoliation); *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *5 (D.N.J. Aug. 4, 2009) (same).

## II. The Court should order Benedictine to engage and pay for a neutral forensic examiner to remedy Benedictine's failure to collect and produce responsive ESI.

Benedictine's failure to give a reasonable explanation for its discovery failures leaves Plaintiff no choice but to request a forensic examination. Forensic examination is warranted where "the moving party can actually prove that the responding party has concealed information *or* lacks the expertise necessary to search and retrieve all relevant data." *Belcastro,* 2019 WL 7049914, at *2. "As this language suggests, the non-moving party may be required to submit to a forensic exam even if that party has not intentionally withheld discoverable ESI: in particular, a third-party investigation may be appropriate when the non-moving party 'fails to initiate a reasonable process to search for, collect and produce responsive ESI.'" *Id.* (quoting *Procaps S.A. v. Patheon, Inc.*, 2014 WL 11498061, at *3 (S.D. Fla. Dec. 30, 2014)). That is what happened here.

Benedictine has either (a) concealed responsive documents; (b) lost or destroyed responsive documents, including in violation of its own document retention policy; or (c) lacks the competence to collect and produce responsive documents. Benedictine has concealed the nature

of its searches and the scope of its litigation hold, effectively hiding what other documents were lost, destroyed, or otherwise not collected.

Benedictine's counsel has also failed to adequately supervise the collection of relevant ESI. Benedictine's counsel cannot even identify what sources of ESI are available. Instead, Benedictine used employees with no training or expertise in ESI to search for documents, without search terms or other instructions to conduct a competent search. Benedictine's trickling productions indicates that Benedictine and its counsel do not possess the requisite expertise. *See Belcastro*, 2019 WL 7049914, at *3 (piecemeal productions show lack of expertise).

The limited forensic examination that Plaintiff seeks is proportional to the needs of the case. The forensic examiner will do the work that Benedictine should have done long ago: identify sources of responsive documents and perform reasonable searches of those sources. The narrow scope of the forensic examination Plaintiff seeks is laid out in Exhibit 14 to this Motion. (Ex. 14, Proposed Order.) Plaintiff's request for a limited forensic examination is also proportional to the needs of the case because the case continues to be delayed as Plaintiff's counsel painstakingly attempts to get Benedictine to do its job and produce responsive documents this Court ordered it to produce and which its own witnesses say exist. Plaintiff will be further prejudiced by Benedictine's use of the missing documents as a shield to defend against Plaintiff's claims.

Under these extraordinary circumstances, this Court should grant Plaintiff's request for a neutral forensic examination of Benedictine's ESI, at Benedictine's expense. *Webb v. CBS Broad., Inc.*, 2011 WL 1743338, at *6-8, *17-18 (N.D. Ill. May 6, 2011) (ordering party to pay fees and costs of a forensic examination because of the party's failure to comply with discovery obligations); *see also Procaps S.A. v. Patheon Inc.*, 2014 WL 800468, at *2 (S.D. Fla. Feb. 28, 2014), *amended*, 2014 WL 11878435 (S.D. Fla. May 5, 2014) (ordering party to pay for a

comprehensive forensic search of that party's ESI files and awarding fees where counsel left the collection of relevant documents to employees).

## III. The Court should award Plaintiff's attorneys' fees and costs.

If a party "fails to obey an order to provide or permit discovery" the court may issue sanctions. Fed. R. Civ. P. 37(b)(2)(A). Additionally, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). As demonstrated throughout this motion, Benedictine and its counsel have failed to obey this Court's Order compelling Benedictine to produce, among other things, at least 35 responsive documents its own witnesses testified exist. Benedictine has offered no justification for this failure nor is there any reasonable justification. Therefore, Benedictine and/or its counsel must pay Plaintiff's reasonable expenses, including attorney's fees, caused by Benedictine's failure.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court grant this motion, enter Plaintiff's proposed order attached to this motion as Exhibit 14, and grant Plaintiff such other and further relief as the Court deems just and appropriate.

Respectfully Submitted,

/s/ *Margaret E. Galka*

Margaret E. Galka (#6329705)
Shawn M. Collins (#6195107)
THE COLLINS LAW FIRM, P.C.
1770 Park St., Ste. 200
Naperville, IL 60563
630-527-1595
*mgalka@collinslaw.com*
*shawn@collinslaw.com*
Attorneys for Plaintiff