# Exhibit 1



**SHAWN M. COLLINS**
**ROBERT L. DAWIDIUK**
**EDWARD J. MANZKE**

JOHN D. RISVOLD
MARGARET E. GALKA
LEONARD E. HUDSON
KATHARIN EBBESEN

*Of Counsel*

JOHN A. SOPUCH, III
NORMAN B. BERGER

Darcy L. Proctor
Carter R. Frambes
Tressler LLP
233 S. Wacker Drive
61st Floor
Chicago, IL 60606
dproctor@tresslerllp.com
cframbes@tresslerllp.com

**VIA EMAIL**

March 14, 2023

      RE:    *Fatimah Totten v. Benedictine University,* Case No. 1:20-cv-06107

Counsel,

      We are now past the close of fact discovery, and it is clear that more than 50 documents—admitted under oath by Benedictine University ("Benedictine") witnesses to exist, and which shed critical light on the Benedictine conduct that lies that the heart of this civil rights case—have either deliberately not been produced by Benedictine, despite even a Court order compelling Benedictine to do so, or have been destroyed by Benedictine in violation of its obligation to preserve information relevant to pending or anticipated litigation. This letter identifies those documents precisely, repeats Plaintiff's insistence that they be produced immediately, and seeks answers to detailed questions about whether, in searching for these documents, Benedictine exercised diligence adequate to comply with its obligations under the Federal Rules of Civil Procedure.

      A list of these missing documents follows in Section I of this letter. Plaintiff requests that Benedictine University produce these responsive documents on a rolling basis with production complete no later than March 21, 2023.

      The large volume of responsive documents that Benedictine has not produced shows that Benedictine has not conducted reasonably diligent searches, has not consulted with document custodians whose own sworn testimony is that the unproduced documents exist, has not undertaken reasonable measures to address the production of electronically stored information ("ESI"), and either destroyed evidence or disobeyed the Court's orders. Because of the large volume of

responsive documents that Benedictine has not produced and because Benedictine has produced other contemporaneous and subsequent documents related to the same subject matter and/or involving the same individuals, Plaintiff Fatimah Totten demands a thorough explanation of what Benedictine did to comply with its discovery obligations including, but not limited to, answers to the questions contained in Section II of this letter by March 21, 2023. Plaintiff demands this explanation so that, if warranted, she may seek relief with the Court including, but not limited to, a forensic analysis of Benedictine's electronic files.

Plaintiff's counsel is available to meet immediately to confer on these urgent matters.

**Section I – Documents that Benedictine's Own Employees Say Exist that Benedictine Has Not Produced.**

1. Documents reflecting the final sanctions Benedictine decided to impose on Marquis Dixon as a result of its investigation of Plaintiff Fatimah Totten's Title IX complaint that Marquis Dixon raped her three times and, on another occasion, grabbed and threw her around her apartment on Benedictine's campus. Also, documents reflecting Benedictine's notifications to Plaintiff Fatimah Totten and Marquis Dixon of the final sanctions. More specifically:

    a. Email or other written notification informing Marquis Dixon of the final sanctions that Benedictine issued against him as a result of Plaintiff's Title IX complaint. Sarver Dep. Transcript at pp. 285-286; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 10, 11(a-b), 12, 13, 15.

    b. Benedictine's internal documentation of the final sanctions that Benedictine would issue against Marquis Dixon. Sarver Dep. Transcript at pp. 305-306; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 10, 11(a-b), 12, 13, 15.

    c. Email from and/or copying Benedictine Dean of Students Marco Masini purportedly notifying Plaintiff of the final sanctions that Benedictine issued against Marquis Dixon as a result of Plaintiff's Title IX complaint. Sarver Dep. Transcript at p. 285; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 10, 11(a-b), 12, 13, 15.

Plaintiff claims that Benedictine violated Title IX because it was deliberately indifferent to, and provided a clearly unreasonable response to, her complaint that she was raped three times and thrown around her apartment and bruised by another student named Marquis Dixon. Benedictine's Title IX Coordinator, Dr. Tammy Sarver, found Marquis Dixon responsible for raping Plaintiff three times and recommended to Benedictine Dean of Student Marco Masini certain "sanctions" for Marquis Dixon.

Documentation reflecting what final sanctions Benedictine actually decided to give and communicate to Marquis Dixon, if any, is essential to evaluating whether Benedictine was deliberately indifferent to Plaintiff's Title IX complaint and to its own finding that Marquis Dixon raped Plaintiff three times. Indeed, if no such communication existed, Benedictine was undoubtedly

2

deliberately indifferent to Plaintiff's Title IX complaint and to its own finding that Marquis Dixon was responsible for raping Plaintiff. Similarly, documentation of notification to Plaintiff of what final sanctions were given to Marquis Dixon, if any, sheds light on Benedictine's deliberate indifference to Plaintiff's Title IX complaint and her right to know the outcome of the Title IX investigation.

2. Internal communications between Benedictine employees, other than the Benedictine University Police Department ("BUPD"), concerning Plaintiff Fatimah Totten's Title IX complaint, the investigation of Plaintiff's Title IX complaint, the findings and sanctions related to Plaintiff's Title IX complaint and Plaintiff's complaints concerning her roommate. More specifically:

    a. Dr. Tammy Sarver's email to Benedictine Dean of Students Marco Masini containing a draft written Title IX report reflecting Dr. Tammy Sarver's recommendations for sanctions Benedictine should give to Marquis Dixon as a result of Plaintiff's Title IX complaint. Sarver Dep. Transcript at pp. 286-287; Masini Transcript Page 19-20, 82; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 10, 11(a-b), 12, 13, 15.

Any draft Title IX reports and related communications are directly relevant to the reasonableness of any final sanctions given to Marquis Dixon as a result of Plaintiff's Title IX complaint and to whether Benedictine conducted an adequate Title IX investigation.

    b. Notes taken by Kate Heidkamp, co-investigator of Plaintiff's Title IX complaint, when she and Dr. Sarver interviewed witnesses during their investigation into Plaintiff's Title IX complaint. Sarver Dep. Transcript at p. 141; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 10, 11(a-b), 12, 13, 15.

Kate Heidkamp's notes from what she witnessed and discussed during the investigation are highly relevant to whether Benedictine conducted a Title IX-compliant investigation and whether the outcome of the investigation, including any sanctions considered for Marquis Dixon, were reasonable.

    c. Dr. Tammy Sarver's notes from her meeting with Plaintiff's roommate concerning Plaintiff. Sarver Dep. Transcript at p. 158 (testifying that she maintains copies of the notes and could provide them to her counsel); *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 2, 3, 4, 7, 11(c), 12, 13.

What Dr. Sarver learned from Plaintiff's roommate is directly relevant to the adequacy of the Title IX investigation and outcome of the investigation as well as relevant to Plaintiff's claim that by treating Plaintiff's roommate (a student of a different race and national origin than Plaintiff) more favorably than Plaintiff, Benedictine discriminated against Plaintiff based on her race and national origin.

3. Benedictine's communications with Plaintiff Fatimah Totten and/or concerning Benedictine's handling of her Title IX complaint, resources and accommodations available

3

to Plaintiff as a result of her Title IX complaint, and/or her complaints about her roommate. More specifically:

a. A resource and referral guide containing resources for survivors of sexual assault that was allegedly provided to Plaintiff via a link that is no longer working. Sarver Dep. Transcript at pp. 114-116; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 5, 6, 7, 10, 11(a-b), 12, 15.

b. Email from Yvette Knox (Former Executive Administrative Assistant to Benedictine's President) to Marco Masini and Benedictine President Charles Gregory with her notes concerning what Plaintiff Fatimah Totten reported to her when she came to her to request a meeting with the President to discuss her requests for accommodations and her concerns that Benedictine was not taking her report to Benedictine that she had been sexually assaulted seriously. Knox Dep. Transcript at pp. 51-52, 56; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 5, 6, 7, 10, 11(a-b), 12, 13, 15.

Plaintiff claims that Benedictine violated Title IX by failing to provide her with resources and other academic accommodations available to survivors of sexual assault on Benedictine's campus. The resource and referral guide that Dr. Tammy Sarver allegedly provided to Plaintiff is directly relevant to this claim. Also highly relevant to that claim is the knowledge that Benedictine had of Plaintiff's requests for resources and accommodations made to Ms. Knox. Ms. Knox's email is clearly relevant to, *inter alia*, Plaintiff's claim that Benedictine failed to provide her with reasonable accommodations owed to her as a result of her Title IX complaint.

4. Communications between BUPD and Dr. Tammy Sarver and/or Marco Masini concerning Plaintiff Fatimah Totten's report that she was raped and thrown around her apartment by Benedictine student Marquis Dixon. More specifically:

   a. Emails to Dr. Tammy Sarver from and/or copying BUPD officer(s) containing information about Plaintiff's report that she had been raped and attacked by Marquis Dixon and attaching a December 3, 2018 BUPD report concerning Plaintiff's report that she had been raped. Sarver Dep. Transcript Page 98-99, 147-148; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 10, 11(a-b), 12, 13, 15.

   b. Emails to Dr. Tammy Sarver from and/or copying Benedictine Dean of Students Marco Masini containing information about Plaintiff's report to the BUPD that she had been raped by Marquis Dixon and attaching a December 3, 2018 BUPD report concerning Plaintiff's report that she had been raped. Sarver Dep. Transcript at pp. 98-99, 147-148; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 10, 11(a-b), 12, 13, 15.

   c. Email from BUPD Officer Samuel Savage to Marco Masini concerning Plaintiff's report to him that she had been sexually assaulted by another Benedictine student.

> Savage Dep. Transcript at pp. 43-44; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 3, 4, 10, 11(a-b), 12, 13 15.

When and how Benedictine Dean of Students Marco Masini and Benedictine Title IX coordinator Dr. Tammy Sarver learned of Plaintiff's report to the BUPD that she had been raped three times is directly relevant to whether Benedictine neglected its duty under Title IX to timely inform Plaintiff of her right to make a Title IX complaint and of the availability of resources for sexual assault survivors and academic accommodations. Any information that BUPD shared with Dr. Sarver and/or Marco Masini concerning Plaintiff's report is essential to determining what information Dr. Sarver and Marco Masini considered, or should have considered, during the Title IX investigation and ultimately when determining what sanctions to give Marquis Dixon.

5. Email from Yvette Knox (Former Executive Administrative Assistant to Benedictine's President) to Marco Masini and Benedictine President Charles Gregory containing her notes of what she observed at a March 2019 meeting between Plaintiff, Plaintiff's mother, Plaintiff's sister, Marco Masini and herself where Plaintiff's Title IX complaint and issues with her roommate were discussed. Knox Dep. Transcript at pp. 135-137. *see* Pl.'s 3/8/2022 Doc. Req. Nos. 1, 2, 3, 4, 6, 7 10, 11(a-c), 12, 13, 15.

Plaintiff claims that during this March 2019 meeting Marco Masini failed to provide her with any meaningful response to her concerns about how Benedictine handled her Title IX complaint and how she could go about accessing her education at Benedictine. Plaintiff further claims, as evidence that Benedictine discriminated against her based on her race and national origin, that at this March 2019 meeting Marco Masini said that Benedictine would have handled Plaintiff's Title IX complaint differently had she been a different kind of student. Plaintiff and her mother interpreted this statement to mean had she been a student of a different race (Plaintiff is half-black and half-white) or national origin (Plaintiff is Muslim and of Middle Eastern decent). Yvette Knox's notes concerning what she observed and what was said at the meeting are directly relevant to all of Plaintiff's sex, race and national origin discrimination claims.

6. Documents reflecting Benedictine's knowledge of, investigation of, and findings concerning the February 2018 reports of students, other than Plaintiff, that Marquis Dixon sexually assaulted and/or sexually harassed them prior to raping Plaintiff Fatimah Totten. More specifically:

    a. The final Title IX report related to the February 2018 Title IX investigation concerning respondent Marquis Dixon. Padish-Hoebing Dep. Transcript at p. 87; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.
        i. A version of the final Title IX report containing the President of Benedictine's signature. Padish-Hoebing Dep. Transcript at p. 94-95, 102.
        ii. A version of the final Title IX report containing Nancy Stoecker's signature and/or email or other written communication from Nancy Stoecker to Benedictine's then Title IX coordinator, Erica Conrad (now known as Erica Padish-Hoebing), reflecting her approval/sign-off of the final Title IX report.

5

        Padish-Hoebing Dep. Transcript at p. 100-101; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

    iii. A version of the final Title IX report containing Marco Masini's signature and/or email or other written communication from Marco Masini to Erica Conrad reflecting his approval/sign-off of the final Title IX report. Padish-Hoebing Dep. Transcript at p. 100-102; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

b. Erica Conrad's physical file concerning her February 2018 Title IX investigation of a complaint wherein Marquis Dixon was the respondent to which Dr. Tammy Sarver has access and Nancy Stoecker controls. The file contains, at least, Erica Conrad's summary of interviews, handwritten notes, the final report and any related police reports. Padish-Hoebing Dep. Transcript at p. 84-85; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

c. Erica Conrad's electronic file concerning her February 2018 Title IX investigation of a complaint wherein Marquis Dixon was the respondent to which Dr. Tammy Sarver and Nancy Stoecker have access. The file contains, at least, Erica Conrad's "typewritten summaries of all interviews and the final report. And any other documents related to it…." Padish-Hoebing Dep. Transcript at p. 97-100; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

d. Erica Conrad's email to Marco Masini containing the final Title IX report related to the February 2018 Title IX investigation. Padish-Hoebing Dep. Transcript at p. 86, 94, 110; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

e. Erica Conrad's email to Benedictine's President containing the final Title IX report related to the February 2018 Title IX investigation. Padish-Hoebing Dep. Transcript at p. 86, 94, 100-102, 110; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

f. The Benedictine President's email(s) to Erica Conrad and/or Marquis Dixon containing his sign-off on Erica Conrad's final Title IX report related to the February 2018 Title IX investigation. Padish-Hoebing Dep. Transcript at p. 95, 102; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

g. Erica Conrad's email to Nancy Stoecker containing the final Title IX report related to the February 2018 Title IX investigation. Padish-Hoebing Dep. Transcript at p. 86, 100, 110; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

h. Nancy Stoecker's physical copy of Erica Conrad's final Title IX report related to the February 2018 Title IX investigation. Padish-Hoebing Dep. Transcript at p. 86; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

i. Erica Conrad's email to Marquis Dixon containing the final Title IX report related to the February 2018 Title IX investigation concerning him as the respondent. Padish-Hoebing Dep. Transcript at p. 86, 110-111; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

j. Erica Conrad's email to her co-investigator of the February 2018 Title IX complaint, either Dr. Tammy Sarver or Betsy Reineheart, containing the final Title IX report related to the February 2018 Title IX investigation concerning him as the respondent. Padish-Hoebing Dep. Transcript at p. 111-113; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

k. Erica Conrad's email(s) to the complainant(s) containing the final Title IX report related to the February 2018 Title IX investigation. Padish-Hoebing Dep. Transcript at p. 110; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

l. Erica Conrad's written statements of a Title IX complainant and witnesses interviewed (including, but not limited to, Brittani ▮▮▮, Teciana ▮▮▮, Clare ▮▮▮, Marquis Dixon, Monica Miller, Caroline, and Dr. Vince Gaddis) that she reviewed with each witness and had them sign. Padish-Hoebing Dep. Transcript at p. 77; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

m. Erica Conrad's email to Brittani ▮▮▮ containing Brittani's written statement from her Title IX interview so that she could review and approve it. Padish-Hoebing Dep. Transcript at p. 77-78; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

n. Brittani ▮▮▮'s email to Erica Conrad containing and/or a physical copy (still in physical form and/or subsequently scanned and saved on a computer) of Brittani's signed written statement from her Title IX interview. Padish-Hoebing Dep. Transcript at p. 84, 97; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

o. Erica Conrad's email to Clare ▮▮▮ containing Clare's written statement for her Title IX interview so that she could review and approve it. Padish-Hoebing Dep. Transcript at p. 80-81; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

p. Clare ▮▮▮'s email to Erica Conrad containing and/or a physical copy (still in physical form and/or subsequently scanned and saved on a computer) of Clare's signed written statement from her Title IX interview. Padish-Hoebing Dep. Transcript at p. 84, 97; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

q. Erica Conrad's email to Teciana ▮▮▮ containing Teciana's written statement for her Title IX interview for Teciana to review and approve. Padish-Hoebing Dep. Transcript at p. 81-82; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

7

    r. Teciana ▮'s email to Erica Conrad containing and/or a physical copy (still in physical form and/or subsequently scanned and saved on a computer) of Teciana's signed written statement from her Title IX interview. Padish-Hoebing Dep. Transcript at p. 84, 97; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

    s. Erica Conrad's email to Title IX Complaint Respondent Marquis Dixon containing Marquis's written statement for his Title IX interview for Marquis's review and approval. Padish-Hoebing Dep. Transcript at p. 82; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

    t. Marquis Dixon's email to Erica Conrad containing and/or a physical copy (still in physical form and/or subsequently scanned and saved on a computer) of Marquis Dixon's signed written statement from his Title IX interview wherein he was the respondent. Padish-Hoebing Dep. Transcript at p. 84, 97; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

    u. Emails containing and/or a physical copies (still in physical form and/or subsequently scanned and saved on a computer) of all other individual's statements from their Title IX interviews in connection with the February 2018 Title IX complaint against Marquis Dixon. Padish-Hoebing Dep. Transcript at p. 84, 97; *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15.

    Plaintiff was raped by Marquis Dixon once in August 2018 and twice in October 2018. Prior to raping Plaintiff, in February 2018, three other Benedictine students (▮▮▮▮▮) reported to the BUPD that Marquis Dixon sexually assaulted and/or sexually harassed them. In February 2018, at least one Benedictine student other than Plaintiff, submitted a Title IX complaint alleging that Marquis Dixon sexually assaulted and/or sexually harassed her.

    Any documentation reflecting Benedictine's knowledge of, investigation of, or findings related to reports that Marquis Dixon had sexually assaulted and/or harassed other Benedictines students, prior to raping Plaintiff, is plainly relevant to Plaintiff's allegations that Benedictine violated Title IX by making her vulnerable to being raped by Marquis Dixon as well as the reasonableness of Benedictine's decision concerning what sanctions to give Marquis Dixon as a result of raping Plaintiff 3 times.

7. Communications to ▮▮▮▮▮ informing them of their right to make a Title IX complaint.
    a. Email from Erica Conrad to all students, including ▮▮▮▮▮ informing them of their right to submit a Title IX complaint to Benedictine. Padish-Hoebing Dep. Transcript at p. 60-63. *see* Pl.'s 3/8/2022 Doc. Req. Nos. 3, 7(c), 15, 18.

    One way Plaintiff intends to prove that Benedictine made her vulnerable to being raped by Marquis Dixon three times, is through evidence of Benedictine's failure to notify the students that

in February 2018 reported to the BUPD that they had been sexually assaulted and/or harassed by Marquis Dixon that they may also bring a Title IX claim against Marquis Dixon. Any emails or other communications to those students concerning their Title IX rights are plainly relevant to this claim.

8. Responsive text messages from Benedictine employees concerning Plaintiff's Title IX complaint, Plaintiff's complaints concerning her roommate and any other student's complaint that Marquis Dixon sexually assaulted and/or harassed them. *See* Pl.'s 3/8/2022 Doc. Req. Nos. 1-26, p. 2, Definitions and Instructions #2 (defining "document" to include texts and text messaging applications).

Benedictine has not produced any text messages. Dr. Tammy Sarver's testimony that no one asked her to search her phone for responsive text messages is indicative that Benedictine did not search for any responsive text messages from/to any Benedictine employee. *See e.g.*, Sarver Dep. Transcript at p. 149 (testifying that no one asked her to search her phone for text messages with Plaintiff). This failure to search for responsive text messages is especially alarming considering Plaintiff has produced responsive text messages including some text messages to/from Dr. Tammy Sarver concerning her Title IX complaint.

**Section II – Plaintiff's Questions Concerning What Benedictine Did to Comply with its Discovery Obligations**

1. Litigation hold
    - Did Benedictine put a litigation hold in place to ensure preservation of relevant documents? If yes, when? If the hold is in writing, please provide a copy and a list of custodians who received the litigation hold and the date on which each custodian received the litigation hold.

2. Electronically Stored Information ("ESI")
    - Did Benedictine and/or Tressler LLP hire an ESI vendor for the purpose of this litigation? If yes, what is the name of the vendor?
    - Were Benedictine's and Benedictine Employees' ESI files searched?
        - Did Benedictine and/or Tressler LLP consult document custodians to identify ESI and other relevant information and to develop search protocols? If so, which custodians and when?
        - Whose ESI files were searched and what is the nature of the ESI (*e.g.*, email, files saved to local hard drive)?
        - Who conducted searches of Benedictine's and Benedictine Employees' electronic files?
        - Who reviewed Benedictine's and Benedictine Employees' electronic files to determine whether they were responsive to Plaintiff's discovery requests?
    - Does Benedictine have servers, networks and/or shared-electronic databases (collectively, "databases") available to be searched for responsive electronic documents?
        - What are the databases?

9

- - - o Who maintains the databases?
    - o Were the databases searched for responsive electronic documents?
      - ▪ When?
      - ▪ What was the process for searching the databases?
      - ▪ Who searched the databases?
  - Were any searches for responsive text messages conducted? If so, which custodians' text messages were searched, and what was the search protocol?
  - Were individual current and former Benedictine students' emails maintained on Benedictine's email network searched?
    - o Was Brittani Wayne's email searched?
    - o Was Clare Peter's email searched?
    - o Was Marquis Dixon's email searched?
    - o Was Teciana Garay's email searched?
    - o Was Fatimah Totten's email searched?

3. Hard-copy Documents

  - Was there a search(es) conducted for responsive hard-copy documents?
    - o Who conducted the searches?
    - o What locations were searched?
    - o Who reviewed hard-copy documents to determine if they were responsive?
    - o Which document custodians, if any, were consulted and when?

4. Benedictine's Document Retention and Destruction Policies dating back to January 2018.
  - Does Benedictine currently maintain a document retention and/or destruction policy? Please provide a copy of the policy if it exists.

  - Did Benedictine maintain a document retention and or destruction policy from January 2018 to March 2023? Please provide a copy of the policy(ies) if it exists.

*  *  *

Please provide the missing documents listed in Section I of this letter no later than March 21, 2023. Please answer our questions listed in Section II of this letter no later than March 21, 2023. Plaintiff's counsel is available to meet immediately to confer on these urgent matters.

Sincerely,

*/s/ Margaret E. Galka*

Margaret E. Galka
Counsel for Plaintiff Fatimah Totten

10